Rene L. Valladares
Federal Public Defender
Nevada State Bar No. 11479
Erin Gettel
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89109
(702)388-6577
Erin_Gettel@fd.org

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>    v.<br><br>Dustin Randall,<br><br>    Defendant. | Case No. 2:18-cr-00303-JCM-EJY<br><br>**Formal Objections to Presentence Investigation Report** |

Dustin Randall submits these formal objections to the August 10, 2020, Revised Presentence Investigation Report. First, this Court should assess Randall a total of $5,000, rather than $10,000, under the JVTA. Second, Randall should receive a two-level enhancement under USSG 2G2.2 § (b)(3)(F) for knowing distribution instead of the five-level enhancement for distribution for valuable consideration under § (b)(3)(B), resulting in a corrected Guidelines range of 151–188 months. Third, this Court should revise the PSR to exclude three pieces of information that could result in physical harm to Randall and to avoid inaccurate or misleading summarization.

I.  **Legal objections**

   A.  **The JVTA special assessment should be $5,000 total, not $5,000 per count.**

In 2015, Congress enacted The Justice for Victims of Trafficking Act, which amended the U.S. Code by adding § 3014.[1]  Section 3014 requires sentencing courts to impose, in addition to the special assessment under § 3013 (the provision that gives rise to the $100 special assessment per felony count), "an amount of $5,000 on any non-indigent person or entity" convicted of certain offenses, including child pornography offenses.  The PSR is unclear as to whether this Court should order Randall to pay $5,000 total under the JVTA, or $5,000 per count (as with general special assessments under § 3013), for a total of $10,000.[2]  Randall objects to the PSR to the extent that it indicates the JVTA assessment should be on a per-count basis.

There is scant caselaw on this specific issue.  However, the Second Circuit considered it just four months ago in *United States v. Haverkamp*,[3] holding that "the text of § 3014, taken as a whole and in context, is straightforwardly meant to be applied on a per-offender, not a per-count, basis."[4]  First, the court reasoned that, "[a]s a matter of grammar and common understanding, '*an* amount' on any person convicted means the amount is assessed one time.  It does not mean an amount for each count of conviction."[5]  Second, comparing § 3014 to § 3013 shows

---

[1] 18 USC § 3014.

[2] Compare PSR at ¶ 23, with PSR at page 24 (JVTA Special Assessment of $5,000 total (versus the above special assessment, which notes that it is $100 per count).

[3] 958 F.3d 145 (2d Cir. 2020).

[4] *Id.* at 149.

[5] *Id.* (emphasis added).

2

that, "when Congress intended multiple amounts to be assessed rather than 'an amount' it knew how to do so."[6] Third, although not conclusive, the *Haverkamp* court noted that its reading was consistent with the Act's legislative history.[7] This Court should find the *Haverkamp* court's reasoning persuasive and assess Randall a total JVTA assessment of $5,000 if it finds Randall non-indigent.[8]

> **B. Randall should receive a two-level enhancement for knowing distribution rather than a five-level enhancement for distribution in exchange for valuable consideration.**

### 1. Legal standard

Subsection (b)(3) of USSG § 2G2.2 sets forth various specific offense enhancements depending on whom a defendant distributed child pornographic material to and for what purpose. As relevant here, § (b)(3)(B) imposes a five-level enhancement "[i]f the defendant distributed in exchange for any valuable consideration, but not for pecuniary gain," while § (b)(3)(F) applies a two-level enhancement if "the defendant knowingly engaged in distribution" other than as described in the preceding sections. The application note to §(b)(3)(B) explains that the phrase "distributed in exchange for any valuable consideration" "means the defendant agreed to an exchange with another person under which the defendant knowingly distributed to that other person for the specific purpose of obtaining something of valuable consideration from that other person," including child pornographic material.

---

[6] *Id.* at 150.

[7] *Id.*

[8] It appears that the only other Court of Appeals to reach this issue was the Third Circuit in *United States v. Johman*, 948 F.3d 612 (3d Cir. 2020), which was decided a few months before *Haverkamp*. The *Haverkamp* court addressed the *Johman* decision and explains why it is unpersuasive. *Id.* at 150 n.3.

3

**2.     Analysis**

The chat lots provided in discovery show that on June 10, 2017, Proctor (the North Carolina defendant) sent Randall two links containing child pornography.[9] Over the next two days, Proctor sent Randall several messages asking him to reciprocate. At around 6:00 p.m. on June 12th, Randall finally reciprocated by sending Proctor a link that also contained child pornography. The government attached to its sentencing memorandum a different and longer version of these chats not previously disclosed to defense counsel.[10] This exhibit contains an additional page of Proctor hassling Randall to send him child pornography, and it appears that Randall initially simply sent Proctor the same link that Proctor had already sent to him.[11]

Even setting the above discrepancies and resulting reliability issues aside, it does not appear that Randall received anything in exchange for the link that he eventually sent to Proctor, or that he sent the link with the specific purpose of doing so. Unlike Proctor, Randall did not follow-up with a request for any material in exchange, much less repeated requests. Notably, the government bears the burden of proving any "facts necessary to enhance a defendant's offense level under the Guidelines."[12] And an objected-to PSR is insufficient to support a sentencing enhancement.[13] In other words, it is on the government to show that

---

[9] Exhibit A (Bates 40–41).

[10] *Compare* ECF No. 95-1*, with* Ex. A.

[11] ECF No. 95-1 at 4.

[12] *United States v. Burnett*, 16 F.3d 358, 361 (9th Cir. 1994) (citation omitted).

[13] *See United States v. Ameline*, 409 F.3d 1073, 1085–86 (9th Cir. 2005) (When a defendant objects to statements contained in the PSR, "the court may not simply rely on the factual statements" within the PSR to impose a sentencing enhancement).

4

the enhancement applies and not on Randall to disprove it. At the very least, the government must show that (1) Randall agreed, either explicitly or implicitly, to an exchange with another person, under which (2) Randall knowingly distributed child pornography to that other person (3) for the specific purpose of obtaining something of valuable consideration (including child pornography), (4) from that other person.[14] Although Proctor's messages may show that he engaged in such distribution, Randall's do not.

Both the PSR's and the government's responses to Randall's informal objections on this point relied on the Ninth Circuit's brief decision in *United States v. Bonnett*[15] for the proposition that trading child porography for child pornography is distribution for a thing of value within the meaning of the guidelines. But Bonnett is both legally and factually distinguishable.

*Bonnett* is legally distinguishable because it applied the 2015 Guidelines, which explicitly applied the five-level enhancement to anyone who distributed child pornography "for the receipt, *or expectation of receipt*, of a thing of value . . . ."[16] By contrast, current § (b)(3)(B) applies only "[i]f the defendant distributed in exchange for any valuable consideration . . . ." The commentaries to the 2015 and

---

[14] This formulation is taken from *United States v. Oliver*, 919 F.3d 393, 403–404 (6th Cir. 2019). The *Oliver* test is formulated from *United States v. Halverson*, 897 F.3d 645, 652 (5th Cir. 2018), which appears to require the government to additionally show that the defendant actually received the thing of value from the other person under the fourth element. This Court need not decide whether the *Oliver* or *Halverson* court is correct because the government fails to show either the first or third element here.

[15] 872 F.3d 1045 (9th Cir. 2017).

[16] USSG § 2G2.2(3)(b) (2015); *See also United States v. Hernandez*, 795 F.3d 1159, 1164 (9th Cir. 2015) (holding that, under old definition, the enhancement applies to a distributor who anticipates receiving something of value for his distribution, even in the absence of a specific agreement providing reciprocity, and reasoning that "the key word" under prior definition was "expectation").

5

current version also differ.  Under the 2015 version, distribution under § (b)(3)(B) included "any transaction, including bartering or other in-kind transaction, that [was] conducted for a thing of value, but not for profit . . . ."  As outlined above, the current version is narrower and "means the defendant agreed to an exchange with another person under which the defendant knowingly distributed to that other person for the specific purpose of obtaining something of valuable consideration from that other person."

*Bonnett* is also factually distinguishable.  There, the defendant argued that "there was insufficient evidence to establish that there had been an exchange of money or other thing of value as required by the guidelines,"[17] not that he did not, in fact, send child pornography in receipt or expectation of receiving it.[18]  In sum, *Bonnett* not only applied a more expansive version of § (b)(3)(B), it also involved uncontroverted (or at least un-objected to) facts that the defendant "conditioned" his agreement to distribute child-pornographic material on the recipient's promise to send such material in exchange.[19]

Under the PSR and the government's reading, the five-level enhancement would apply any time there is any admitted trading of child pornography (i.e., any time a defendant both distributes and receives the material).  This reading is

---

[17] Appellant's Opening Brief in *United States v. Bonnett*, 2016 WL 4727403, at *19.

[18] *See* Government's Answering Brief in *United States v. Bonnett*, 2016 WL 6822160, at *28–29 (Nowhere in his objection below or on appeal" does Bonnett identify "specific allegations of factual inaccuracy in the PSR;" Bonnett did not dispute that chats demonstrated that he "conditioned" his agreement to send CP on recipient's promise to send him some in exchange).

[19] *Id*.  The brief discussion of this issue in the court's opinion is because the central issue in *Bonnett* was an issue of first impression: whether applying a sentencing enhancement for obstruction of justice based on the defendant's "malingering" improperly chilled defendant's exercise of the right to obtain a competency hearing.

6

inconsistent with the guideline's text and commentary, which could have provided that any such exchange or "trade" triggers the enhancement. But rather than broadening § (b)(3)(B), the 2016 Guidelines narrowed it. And to the extent there is any ambiguity about whether § (b)(3)(B)'s definition includes Randall's distribution to Proctor (as opposed to Proctor's distribution to Randall), that ambiguity must be resolved in Randall's favor because it increases his sentencing exposure.[20]

That said, Randall has pleaded guilty to, and does not dispute, that he knowingly distributed child pornography. Thus, the two-level enhancement under § (b)(3)(F) applies. This would result in a corrected Guidelines range of 151–188 months and a corresponding PSR recommendation of 77-months (after the PSR's recommendation for a 74- month variance is applied). This Court should sustain the defense objection and consider Randall's request for a 60-month sentence from there.

## II. Factual objections

Federal Rule of Criminal Procedure 32(c) governs the contents of presentence investigation reports. Rule 32(c)(3)(A) provides that the PSI must exclude any information that, "if disclosed, might result in physical harm to the defendant or others." This PSR will follow Randall to prison, where he will be at risk of physical harm from other inmates should they learn of his offense of conviction. While we cannot conceal the offenses of conviction and they are necessarily included, there are several factual details included in the PSR that

---

[20] *United States v. Edling*, 895 F.3d 1153, 1158 (9th Cir. 2018) (Explaining that rule of lenity applies to Sentencing Guidelines and required that any doubt as to whether the Guidelines' new definition of extortion includes threats of injury to property (which would increase defendants' sentencing exposure) be resolved in defendants' favor).

7

should be removed because they could subject Randall to violence in prison or are inaccurate/misleading.

### A. Proctor's inflammatory conversations with the undercover detective should be removed.

Paragraphs 7–9 discuss conversations that Proctor had with an undercover detective in which he attempts to meet with the detective's fictitious five-year old daughter. Randall did not and does not know Proctor, did not engage in these conversations, and did not attempt to arrange a meeting with a minor. The inclusion of these details unnecessarily associates Randall with such activity, which poses a threat to his safety. At the same time, these details do not bear on the PSR's Guidelines calculations, nor do they affect security classification and placement within the BOP. This Court should therefore order Probation to revise the PSR to delete these paragraphs. Paragraph 10 adequately explains that, during the investigation of another individual (Proctor), police discovered chat logs between he and Randall, which provides any necessary investigative context.

### B. The summary of the chat log between Randall and Proctor should be revised.

Paragraph 11 contains a misleading description of the chat log between Randall and Proctor, which the PSR summarized based on police reports:

> The chat logs between Proctor and Randall between the dates of June 10 and June 12, 2017, were reviewed by law enforcement. Proctor requested to join Randall's "group" and the two discuss trading child pornography. At some point, Proctor asked Randall if he had "babies or younger to trade," and claimed he "has babies to trade. Proctor then sent Randall a Dropbox link containing 272 videos and 34 images determined to be child pornography.

This description inaccurately suggests that Randall was the creator or administrator of a child-pornography sharing group, which there is no evidence

to support (assuming the group existed at all), and could be read to suggest that he and Proctor participated in the discussion equally and actively discussed trading depictions of babies. That Proctor mentioned that he had videos depicting babies or younger to trade is not attributable to Randall and is overly inflammatory. Additionally, the full chat log (either version) shows that the conversation was initiated, and mostly promulgated by, Proctor. The PSR should be revised to include only the necessary details below and to omit the misleading summary drafted by law enforcement.

> The chat logs between Proctor and Randall between the dates of June 10 and June 12, 2017, were reviewed by law enforcement. ~~Proctor requested to join Randall's "group" and the two discuss trading child pornography. At some point, Proctor asked Randall if he had "babies or younger to trade," and claimed he "has babies to trade.~~ **It was discovered that** Proctor ~~then sent Randall a Dropbox link containing 272 videos and 34 images determined to be child pornography~~ sent child pornography to, and received child pornography from, Randall.

### C. The file descriptions are unnecessary, redundant, and, in some places, inaccurate.

The PSR contains descriptions of *eight* video and image files. Because Randall has pleaded guilty to both counts, the PSR recounts that both the links received and distributed by Randall contain child pornography, and Randall is not objecting to the image-specific enhancements at paragraphs 30 (material involved prepubescent minor), 32 (sadistic or masochistic conduct or sexual abuse or exploitation of an infant or toddler), or 34 (more than 600 images), these details are not necessary to support the PSR's Guidelines calculations. Likewise, they will not affect Randall's security classification within the BOP or his BOP placement. If disclosed, these details could result in harm to Randall by other inmates. Additionally, as noted in the expert report attached as Exhibit B,

several of these file descriptions are misleading.[21] For example, the "video file" described at ¶ 11(a) on page 5 of the PSR is in fact a still image (JPG), and the image does not depict what is stated in that paragraph.[22]

The defense does not seek to litigate piecemeal each of the image descriptions because we do not dispute that the above image-specific enhancements apply and because, as explained in the sentencing memorandum, the specific content of these images does not bear on Randall's risk of reoffending. However, to protect Randall's safety, the PSR should be revised to delete the image descriptions. At the very least, the PSR should be limited to one file description to support each count (one that Randall received and one he distributed).

## Conclusion

Randall requests that this Court impose a total assessment of $5,000 under the JVTA; assess the two-level enhancement under USSG 2G2.2 § (b)(3)(F) instead of the five-level enhancement under § (b)(3)(B), resulting in a corrected Guidelines range of 151–188 months; and make the requested factual revisions to the PSR.

**DATED**: August 12, 2020

            Rene L. Valladares
            Federal Public Defender

          By: */s/ Erin Gettel*
            Erin M. Gettel
            Assistant Federal Public Defender

---

[21] Exhibit B (Expert Report by Computer Forensic Resources).

[22] Undersigned believes the PSR accurately summarized the file descriptions based on summaries it received from law enforcement. Undersigned also understands that this investigation involved hundreds of images, so this is not to say that law enforcement intentionally mixed up or misrepresented the image summaries that eventually found their way into the PSR.

**CERTIFICATE OF ELECTRONIC SERVICE**

The undersigned hereby certifies that he is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on August 12, 2020, he served an electronic copy of the above and foregoing **Formal Objections to Presentence Investigation Report** by electronic service (ECF) to the person named below:

NICHOLAS A. TRUTANICH
United States Attorney
BIANCA ROSE PUCCI
Assistant United States Attorney
501 Las Vegas Blvd. So.
Suite 1100
Las Vegas, NV 89101

*/s/ Brandon Thomas*
Employee of the Federal Public Defender